**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **EARL D. BARRS,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:19-cv-00494-TES** |
| **AUTO-OWNERS INSURANCE COMPANY,** | |
| *Defendant.* | |

**ORDER**

This action ultimately raises the question of whether an insurer's commercial general liability policy affords coverage to an insured whose negligence allowed its contractor/agent to steal from one of its customers.

Specifically, Plaintiff Earl D. Barrs ("Plaintiff") seeks to enforce a consent judgment against AAA General Contractors, Inc. ("AAA")—an insured of Defendant Auto-Owners Insurance Company ("Defendant")—for damages from a failed construction project. Defendant contends that the commercial general liability policy (the "Policy") it issued to AAA does not provide coverage for the claims underlying Plaintiff's consent judgment.[1] Both parties have filed motions for summary judgment on

---

[1] In the alternative, Defendant Auto-Owners Insurance Company ("Defendant") contends that the damages awarded in the consent judgment are expressly excluded from coverage under the terms of the Policy. *See* [Doc. 26-1, pp. 13–15].

the issue of coverage. Therefore, after review of the record and applicable law, the

Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary

Judgment [Doc. 26] and **GRANTS in part** and **DENIES in part** Plaintiff's Motion for

Summary Judgment [Doc. 27].

<u>**BACKGROUND**</u>

A.   <u>**Preliminary Facts**[2]</u>

Plaintiff owns the property located at 211 Third Street West, Tifton, Georgia, and

the building on it—the "Horizon Mill." [Doc. 31-1, ¶ 1]. In May 2016, Plaintiff

contracted with AAA to deconstruct the Horizon Mill and salvage its wood and brick

for his personal use. [*Id.* at ¶ 2]; [Doc. 34, ¶¶ 4, 6]. In turn, AAA hired Z & H

Enterprises, LLC and/or Zachary Hood (collectively, "Hood")[3] to oversee the

deconstruction. [Doc. 31-1, ¶ 3]; [Doc. 34, ¶ 7]. At some point during deconstruction,

Plaintiff noticed that (1) work was not being completed on a consistent basis and (2)

lumber and other materials belonging to Plaintiff were missing from the job site. [Doc.

31-1, ¶ 4]; [Doc. 34, ¶ 10]. As to the missing lumber and other building materials,

Plaintiff later discovered that Hood had stolen them from the job site. [Doc. 31-1, ¶ 5];

[Doc. 34, ¶ 11]. Ultimately, Plaintiff terminated his contract with AAA, claiming its

---

[2] The following facts are established for the purpose of resolving both parties' motions for summary
judgment as to the issue of coverage.

[3] Zachary Hood is the sole owner of Z & H Enterprises, LLC. [Doc. 34, ¶ 15]; [Doc. 28-3, p. 3].

negligence allowed the theft and caused the delay in deconstruction. [Doc. 31-1, ¶ 8]; [Doc. 34, ¶ 13].

On July 10, 2017, Plaintiff notified Defendant that he had retained counsel and was potentially filing suit "as a result of possible breach of contract and negligence on the part of [its] insured, AAA General Contract[ors], Inc. and/or its subcontractors." [Doc. 1-1, pp. 10–11]. One month later, Defendant issued a letter to AAA declaring that it had investigated the incident giving rise to the potential lawsuit and determined that coverage did not exist under the Policy. [Doc. 1-1, pp. 14–18]. On August 31, 2017, Plaintiff filed suit to recover damages for, among other things, AAA's alleged negligent acts regarding the deconstruction of the Horizon Mill. [Doc. 31-1, ¶ 10 (citing *Earl D. Barrs v. AAA General Contractors, Inc., et al*, No. 5:17-CV-335-MTT (M.D. Ga. 2018) (the "Underlying Lawsuit"))]. Specifically, the complaint in the Underlying Lawsuit alleged AAA acted negligently when it: (1) improperly selected workers, subcontractors, and employees; (2) improperly directed workers and subcontractors; (3) inadequately supervised and managed contractors, workers, subcontractors, and employees; (4) inadequately supplied equipment for the deconstruction of the building; and (5) failed to hire an adequate number of skilled workers for the deconstruction. [Doc. 31-1, ¶ 11]; [Doc. 34, ¶ 14]. Based on these allegations, Plaintiff brought the following claims against AAA: negligent deconstruction (Count I), vicarious liability/respondeat superior (Count

II), negligent hiring and retention (Count III), negligent supervision (Count IV), breach of contract (Count V), and breach of warranty (Count VI). [Doc. 28-2].

Upon receiving notice of the complaint, Defendant issued a letter to AAA stating that no coverage existed under the Policy for such claims and, further, that it refused to defend AAA in the Underlying Lawsuit. [Doc. 31-1, ¶ 12]; [Doc. 1-1, pp. 19–20]. The Underlying Lawsuit proceeded along its procedural path, and Plaintiff and AAA eventually negotiated a settlement agreement (the "Settlement Agreement"), wherein AAA admitted liability in the amount of $557,500.00 to the claims of negligent deconstruction (Count I), negligent hiring and retention (Count III), and negligent supervision (Count IV). [Doc. 28-3]; [Doc. 31-1, ¶¶ 13–14]; [Doc. 34, ¶¶ 17–18].

On May 29, 2019, a consent judgment (the "Consent Judgment") was entered against AAA that largely tracked the Settlement Agreement. [Doc. 31-1, ¶ 16]; [Doc. 34, ¶¶ 18, 20]; [Doc. 28-5]. In addition, the Settlement Agreement also assigned Plaintiff any and all of AAA's right to claim coverage and recover available funds under Defendant's Policy. [Doc. 28-3]; [Doc. 34, ¶ 18]. The Consent Judgment did not indicate which portions of the damages award the parties attributed to which claims. [Doc. 34, ¶ 20]; *see generally* [Doc. 28-5]. Soon thereafter, Plaintiff made a demand to Defendant for payment pursuant to the Consent Judgment. [Doc. 31-1, ¶ 22]. Defendant made no payments in response to this demand. [*Id.* at ¶ 23]. Plaintiff then filed the instant action,

4

requesting this Court to (1) declare as a matter of law that Defendant's Policy covers the claims underlying the Consent Judgment and (2) enforce the Consent Judgment against Defendant. *See generally* [Doc. 1]; [Doc. 27-1].

**B.     The Relevant Policy Terms**

Defendant issued Policy No. 984617-38029181-16 to AAA for the term period of January 1, 2016 to January 1, 2017. [Doc. 31-1, ¶¶ 24–25]; [Doc. 34, ¶ 1]. The Policy specifies coverage conditions for any insured, as that term is defined under the Policy. [*Id.*]. Neither party disputes that the acts covered in the Consent Judgment occurred while the Policy was in effect. [Doc. 28-5]. Accordingly, there are several provisions within the Policy that are arguably relevant to the issue of coverage. The Court cites the relevant coverage provisions below:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

[. . .]

   **b.** This insurance applies to "bodily injury" and "property damage" only if:
      **1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    2)  The "bodily injury" or "property damage" occurs during the policy period[.]

[. . .] [Doc. 26-3, p. 125].

As important as it is to note those claims that the Policy covers, it is equally as important to note those claims that the Policy expressly does not cover, i.e., the exclusions. The relevant exclusion provisions Defendants contend apply are:

**2. Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    1)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

    2)  That the insured would have in the absence of the contract or agreement.

[. . .] [*Id.* at p. 126].

**j.   Damage To Property**

"Property damage" to:

[. . .]

> **5)**  Personal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured;
>
> **6)**  That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **7)**  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

[. . .] [*Id.* at pp. 128–29].

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

> **1)**  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **2)**  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

[*Id.* at p. 129].

**SECTION II – WHO IS AN INSURED**

**1.**  If you are designated in the Declarations as:

[. . .]

    **d.**  An organization other than a partnership, joint venture or limited liability company, you are an insured.

[. . .]

**2.**  Each of the following is also an insured:
    **a.**  Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

[*Id.* at p. 134].

**SECTION V – DEFINITIONS**

[. . .]

**9.**  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
    **a.**  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
    **b.**  You have failed to fulfill the terms of a contract or agreement

    if such property can be restored to use by:
    **a.**  The repair, replacement, adjustment or removal of "your product" or "your work"; or
    **b.**  Your fulfilling the terms of the contract or agreement.

[. . .]

**14.** "Occurrence" means an accident, including continuance or repeated exposure to substantially the same general harmful conditions.

[. . .]

**18.** "Property damage" means:
   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   **b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

[*Id.* at pp. 138–41].

## LEGAL STANDARD

The Court decided to bifurcate the issues of liability and damages in this action. *See* [Doc. 16]. In accordance with the reasoning of that decision, the Court limited discovery to the sole issue of coverage and requested that each party file a motion for summary judgment on this initial issue. [*Id.*]. This made sense because if the Policy doesn't cover the claims set forth in the Consent Judgment, then Defendant wins and the case is over. On January 7, 2021, both parties filed their motions for summary judgment. [Doc. 26]; [Doc. 27]. The Court reviewed both parties' briefs on the issue of coverage and concluded that much of the discussion centered on whether Georgia or Alabama law controlled the interpretation of the Policy. Therefore, on May 12, 2021, the Court held a telephone conference with the parties to inform them that Georgia law

would control the interpretation of the Policy; in light of this ruling, the Court permitted the parties to file supplemental briefs on the issue of coverage by August 4, 2021. [Doc. 35]. Both parties submitted their respective supplemental briefs on July 20, 2021. [Doc. 36]; [Doc. 37]. The matter is now ripe for review.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).[4] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other

---

[4] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for
> trial. Rather, on summary judgment, the district court must accept as fact
> all allegations the [nonmoving] party makes, provided they are sufficiently
> supported by evidence of record. So[,] when competing narratives emerge
> on key events, courts are not at liberty to pick which side they think is more
> credible. Indeed, if "the only issue is one of credibility," the issue is factual,
> and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

Stated differently, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and

all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable

jury could make more than one inference from the facts, and one of those permissible

inferences creates a genuine issue of material fact, a court cannot grant summary

judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at

1263.

"The standard of review for cross-motions for summary judgment does not differ

from the standard applied when only one party files a motion, but simply requires a

determination of whether either of the parties deserves judgment as a matter of law on

the facts that are not disputed." *Klim v. DS Servs. of Am., Inc.*, 225 F. Supp. 3d 1373, 1376

(N.D. Ga. 2015) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th

Cir. 2005)). Therefore, the Court considers each motion on its own merits and resolves

all reasonable inferences against the party whose motion is under consideration. *U.S. ex*

*rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1339, 1341 (N.D. Ga.

2013).

## DISCUSSION

Plaintiff moves the Court to declare as a matter of law that Defendant's Policy

covers those claims for which Plaintiff obtained his Consent Judgment in the

Underlying Lawsuit. However, it is critical to remember that Defendant did not take

any part in the Underlying Lawsuit, refusing to defend its insured against those claims

asserted against it on the basis that, in its opinion, the Policy did not provide coverage

for those claims. As important, Defendant could have opted to defend its insured while

reserving its rights under the Policy.

> Under Georgia law, where an insurer is faced with a decision regarding
> how to handle a claim of coverage at the same time a lawsuit is pending
> against its insured, the insurer has three options. First, the insurer can
> defend the claim, thereby waiving its policy defenses and claims of non-
> coverage. *Grant v. State Farm Mut. Auto. Ins. Co.*, 134 S.E.2d 886 (Ga. Ct. App.
> 1964). Second, the insurer can deny coverage and refuse to defend, leaving
> policy defenses open for future litigation. *Southern Guar. Ins. Co. v. Dowse*,
> 605 S.E.2d 27 (Ga. 2004). Or, third, the insurer can defend under a
> reservation of rights. *Id.*

*Hoover v. Maxum Indem. Co.*, 730 S.E.2d 413, 416 (Ga. 2012). Of course, the option that Defendant chose has consequences. An insurer that refuses to defend an action against its insured, "when it could have done so with a reservation of its rights as to coverage, waives the provisions of the policy against a settlement by the insured and becomes bound to pay the amount of any settlement [within a policy's limits] made in good faith, plus expenses and attorneys' fees." *Southern Guar. Ins. Co.*, 605 S.E.2d at 29 (citations omitted). By refusing to defend its insured in the Underlying Lawsuit, Defendant is estopped from contesting its insured's liability, but Defendant is not estopped from contesting coverage under its Policy. *Id.* (citing *Aetna Cas. & Sur. Co. v. Empire Fire & Marine Ins. Co.*, 442 S.E.2d 778, 783 (Ga. Ct. App. 1994)). And that is exactly what Defendant does now—contests coverage for the claims comprising the Consent Judgment. Obviously, if those claims are outside the Policy's scope of coverage, then Defendant made a good bet when it refused to defend AAA in the Underlying Lawsuit, and it now has no duty to indemnify Plaintiff for the damages against its insured in the Consent Judgment.

This is all to say that the issue before the Court is whether the Underlying Lawsuit presented facts and claims that fell within the terms of the Policy. This is an issue of coverage. Accordingly, the Court turns to the pending motions for summary judgment to consider the parties' arguments on the issue.

14

A.    <u>Choice-of-Law Dispute</u>

As a preliminary matter, when the parties filed their motions for summary judgment, they disagreed as to which state's law controlled the interpretation of the Policy. *See* [Doc. 26-1, pp. 7–9]; [Doc. 27-1, pp. 8–10]. Plaintiff argued that Georgia's choice-of-law rule required the application of Georgia insurance law principles. [Doc. 27-1, p. 8 n.29]. Defendant argued that the Policy was issued and delivered in Alabama to an Alabama corporation[5], and therefore, it only made sense for Alabama substantive law to control its interpretation. [Doc. 26-1, p. 8]. On May 12, 2021, the Court held a telephone conference with the parties to inform them that it had reviewed their choice-of-law arguments and determined that Georgia insurance law principles controlled the interpretation of the Policy. [Doc. 35]. Based upon this determination, the Court provided the parties an opportunity to further brief the issue of coverage, focusing on Georgia law. [*Id.*].

Upon review of the supplemental briefs, it appears that neither party now disputes the application of Georgia law. Regardless, the Court finds it necessary to set forth its reasoning in this Order as to its ruling on the choice-of law issue.

As a starting point, the Court notes that this action is before it based on diversity jurisdiction. In diversity cases, a federal court must apply "the law of the forum in

---

[5] According to Defendant, AAA is a "corporation organized and existing under the laws of the State of Alabama with its principal place of business in Alabama." [Doc. 26-2, ¶ 5].

which [it] sits." *LaTorre v. Conn. Mut. Life Ins. Co.*, 38 F.3d 538, 540 (11th Cir. 1994) (citing *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir. 1983)); *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). Georgia is the forum state in this action; therefore, Georgia's choice-of-law rules apply. *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) ("A federal court faced with [a] choice of law issue must look for its resolution [in] the choice of law rules of the forum state.").

Georgia's choice-of-law rules mandate that disputes are to be governed by the doctrine of *lex loci contractus*. *Gen. Tel. Co. of Se. v. Trimm*, 311 S.E.2d 460, 461 (Ga. 1984). "The rule provides that contracts, like insurance policies, 'are to be governed as to their nature, validity[,] and interpretation by the law of the place where they are made." *Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments*, --- F. App'x ----, 2021 WL 2170426, at *4 (11th Cir. 2021) (citing *Travelers Prop.*, 763 F.3d at 1270–71). Under Georgia law, an insurance contract is deemed to have been "made" in the state where it was delivered. *Boardman Petroleum, Inc., v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Relevant to this action, both parties agree that the insurance policy was *delivered* to AAA in the State of Alabama. *See* [Doc. 26-1, p. 3]; [Doc. 32, pp. 9–10].

However, the Court's choice-of-law analysis does not end here. Importantly, there is an exception to the *lex loci contractus* rule. "[T]he Georgia Supreme Court has

16

made it clear that *lex loci contractus* only permits Georgia courts to consider a foreign

state's law when it involves its statutes or judicial decisions on those statutes." *Mt.*

*Hawley*, 2021 WL 2170426, at *4 (citing *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 833–34 (Ga.

2017)); *see also Frank Briscoe Co.*, 713 F.2d at 1503 ("[I]t is clear that the application of

another jurisdiction's laws is limited to statutes and decisions construing those statutes.

When no statute is involved, Georgia courts apply the common law as developed in

Georgia rather than foreign case law.").

In this matter, neither party asserts that an Alabama statute controls. Since no

Alabama statute governs the outcome of this insurance-coverage dispute, the Court

must defer to Georgia common law. *See Mt. Hawley*, 2021 WL 2170426, at *5; *In re Stand*

*'n Seal, Prods. Liab. Litig.*, No. 1:07MD1804-TWT, 2009 WL 2998003, at *2 (N.D. Ga. Sept.

15, 2009) ("If the parties do not identify any foreign statutes in their pleadings, it is

presumed that no foreign statutes are involved.").

### B.    Georgia Insurance Law Principles

"As in any dispute over insurance coverage, the Court begins by examining the

source of coverage itself—the general promises of coverage made in the insurance

policy." *Allstate Ins. Co. v. Harkleroad*, No. 409-CV-011, 2010 WL 2076941, at *4 (S.D. Ga.

May 24, 2010) (quoting *Macon Iron & Paper Stock Co., Inc. v. Transcon. Ins. Co.*, 93 F. Supp.

2d 1370, 1372 (M.D. Ga. 1999)). And, since insurance in Georgia is a matter of contract

law, the Court first turns to some well-established principles regarding contract interpretation/construction. *See Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 663 (Ga. 1996).

First, "[t]he cardinal rule of contractual construction is to ascertain the intent of the parties." *Knott v. Knott*, 589 S.E.2d 99, 101 (Ga. 2003) (citing O.C.G.A. § 13-2-3)). In doing so, the Court must determine whether the language in the relevant insurance policy is clear and unambiguous. *City of Baldwin v. Woodard & Curran, Inc.*, 743 S.E.2d 381, 389 (Ga. 2013). If it is, then the Court simply enforces the policy according to the ordinary and legal meaning of its words. *See Ryan v. State Farm Mut. Auto. Ins. Co.*, 413 S.E.2d 705, 707 (Ga. 1992). And, if it is not, then the Court applies the rules of contractual construction to resolve the ambiguity, starting with the rule that any ambiguity is to be strictly construed against the insurer as drafter of the contract. *Auto-Owners Ins. Co., v. Neisler*, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015) (citing *Ga. Farm Bureau Mut. Ins. Co., v. Meyers*, 548 S.E.2d 67 (Ga. Ct. App. 2001)). "Ambiguity exists where the words used in the contract leave the intent of the parties in question—i.e., [when] that intent is uncertain, unclear, or is open to various interpretations." *Gen. Steel, Inc. v. Delta Bldg. Sys., Inc.*, 676 S.E.2d 451, 453 (Ga. Ct. App. 2009). "But an equally valid rule is that an unambiguous policy requires no construction, and its plain terms must be given full effect even though they are beneficial to the insurer and detrimental to the insured."

*Woodmen v. World Life Ins. Soc'y v. Etheridge*, 154 S.E.2d 369, 372 (Ga. 1967) (citations omitted).

The second rule of construction pertains to exclusions from coverage; that being, any exclusion sought to be invoked by the insurer is likely to be strictly construed against it. *Am. Strategic Ins. Corp. v. Helm*, 759 S.E.2d 563, 567 (Ga. Ct. App. 2014). And lastly, the third rule is that the insurance contract is to be read in accordance with the reasonable expectations of the insured when possible. *Id.* Having outlined these general principles, the Court turns to the source of coverage itself—the Policy.

## C.  Policy Coverage Provisions

Plaintiff contends that the Policy provides coverage for the claims set forth in the Settlement Agreement and Consent Judgment. Defendant disputes this contention, arguing that such claims are not covered under the Policy. This presents a classic coverage dispute. To resolve such a dispute, the Court must turn to the applicable terms of the Policy. And, under the Policy, coverage is only available for "property damage"[6] caused by an "occurrence"—notwithstanding any exclusionary clauses. Therefore, the first question for the Court to consider is whether any of the claims set forth in Plaintiff's Underlying Lawsuit (as outlined above) fall within the Policy's coverage for "property damage."

---

[6] The Policy states that Defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." [Doc. 26-3, p. 125].

### 1)   Does the Underlying Complaint Set Forth Claims that Constitute "Property Damage"?

In this action, the Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property " and "[l]oss of use of tangible property that is not physically injured." [Doc. 26-3, p. 141]. Plaintiff argues (rather broadly)[7] that AAA's admitted negligence in the deconstruction of the Horizon Mill caused him to suffer "property damage." Defendant objects to the argument that *all* damages attributable to AAA's admitted negligence constitute "property damage." In fact, Defendant contends that the *only* potentially arguable "property damage" identified by Plaintiff is his claim for "the loss of the lumber and other materials belonging to [him], which . . . were stolen by the insured's admitted agent." [Doc. 26-1, p. 2].

To determine the nature of damages for which recovery is sought, the Court looks to the allegations of the complaint, as well as those facts supporting the allegations.[8] *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1214 (11th Cir.

---

[7] *See, e.g.,* [Doc. 27-1, p. 15 ("In the instant case, 'property damage' clearly includes the damages Mr. Barrs alleged in his Underlying Complaint which was resolved in good-faith by the Settlement Agreement and confirmed by this Court via Consent Judgment."); ("Since the claims in the Underlying Complaint, that were subsequently affirmatively confirmed by this Court also involve claims for damage and loss of use of 'tangible property,' Mr. Barrs is entitled to coverage for his claims because it amounts to property damage under the Policy.")].

[8] However, "[i]n determining whether a party is entitled to summary judgment on the issue of indemnification, the courts are not limited to looking at the complaint and the policy." *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 785 (Ga. Ct. App. 1998). Rather, the duty to indemnify "is

1999) (citing cases). In this action, the answer to the question of whether the nature of the damages alleged is covered under the Policy is determinative of whether the Court may ultimately enforce the Consent Judgment against Defendant. Accordingly, the Court turns to Plaintiff's complaint in the Underlying Lawsuit to consider his alleged claims for "property damage." Appropriately though, the Court considers only those claims actually covered in the Consent Judgment for which AAA has admitted its liability: negligent deconstruction (Counts I & II); negligent hiring and retention (Count III); and negligent supervision (Count IV). [Doc. 28-2].

a)    Negligent Deconstruction (Counts I & II)

In Plaintiff's negligent deconstruction claim, he alleges that AAA failed to deconstruct the Horizon Mill "in a good and workmanlike manner." [Doc. 28-2, ¶¶ 48, 53–60]. Specifically, he cites AAA's negligence to include the improper selection, direction, supervision and management of its contractors, workers, subcontractors, and employees, as well as the failure to rent the appropriate equipment to deconstruct the Horizon Mill. [*Id.* at ¶¶ 55–58]. And, he similarly contends that AAA failed perform in accordance with minimum industry standards. As a result, Plaintiff contends that he suffered "property damage" because of AAA's aforementioned acts, omissions, and negligence.

---

determined by the 'true facts' as they are established in the underlying action." *Allstate Ins. Co. v. Airport Mini Mall, LLC*, 265 F. Supp. 3d 1356, 1366 (N.D. Ga. 2017).

In response, Defendant argues that these allegations do not support a claim for "property damage" as the term is defined under the Policy. Instead, Defendant argues that these allegations, as pled, more appropriately support a claim for faulty workmanship, and Georgia law is clear that commercial general liability polices (such as the one here) very rarely insure against damages arising from such a claim. [Doc. 31, p. 16 (citing *Taylor Morrison Servs. v. HDI-Gerling Am. Ins. Co.*, 746 S.E.2d 587, 591 (Ga. 2013))]. This is true because the damages alleged in faulty workmanship cases often do not constitute "property damage" as defined under such policies.

It makes sense that Plaintiff disputes the characterization of his negligent deconstruction claim as one for faulty workmanship. However, neither party's characterization of the claim is particularly informative as to the issue of coverage in this action. *See Se. Fire Ins. Co. v. Heard*, 626 F. Supp. 476, 482 (N.D. Ga. 1985) ("Georgia courts look to the underlying cause of the injury to determine coverage, and not just to the specific theory of liability alleged."). The Court is only interested in whether the damages alleged to have arisen from this claim are for "property damage." And upon review of Plaintiff's negligent deconstruction allegations and the applicable caselaw on the matter, it is clear that they do not.

As related to this claim, Plaintiff specifically seeks recovery for those costs associated with "finish[ing] the deconstruction." [Doc. 28-2, ¶ 60]. As Plaintiff explains,

such costs include "hiring another [c]ontractor to complete the project[,]" paying "fee[s] for the removal of materials and debris" from the worksite, and paying for Hood's failure to possess the requisite equipment for deconstruction. [*Id.* at ¶¶ 47, 51]. Plaintiff's basis for recovery appears to stem from Defendant's alleged improper work, and not from any "[p]hysical injury to tangible property" or "[l]oss of use of tangible property." In reaching this conclusion, the Court is guided by the analysis set forth in *Cowart v. Nautilus Insurance Company*, as the facts presented there are similar to the ones before the Court in this action. No. 4:17-cv-142, 2019 WL 254662 (S.D. Ga. Jan. 17, 2019).

In *Cowart*, a homeowner contracted with a builder to install a pool, hot tub, and deck on her property. *Id.* at *1. At the time the builder began the installation, he was insured by a general liability policy that provided coverage for "property damage"— defined as "physical injury to tangible property, including all resulting loss of use of that property" or the "loss of use of tangible property that is not physically injured." *Id.* at *2.

Over the course of the installation, the homeowner became concerned that the builder was not performing his work in a "reasonable, safe, good and workmanlike manner." *Id.* at *1–3. The homeowner was also concerned that the builder had failed to obtain the appropriate construction permits before commencing his work. *Id.* As a result of these concerns, the homeowner filed suit against the builder seeking damages for his

23

negligence, such as his failure to: (1) perform work in a workmanlike manner, (2) hire and train others to perform work in a workmanlike manner, and (3) adhere to and comply with industry standards. *Id.* at *3.

The builder turned to its insurance company to defend him in the suit, but the company refused to provide any defense, stating that any potential damages arising from the homeowner's negligence claims did not qualify as "property damage" as the term was defined under its policy. *Id.* Following the insurance company's refusal to defend, the builder sought a declaratory judgment from the district court as to whether coverage was owed to him. *Id.* That court concluded it was not.

In reaching this conclusion, the district court noted that the homeowner's negligence claims resulted in damages or defects related *only* to the workmanship and construction of the product on which he was hired to work, and therefore, sought damages for the faulty workmanship. *Id.* at *6. The district court in *Cowart* further concluded that the term "property damage" as used in standard commercial general liability policies refers to damage *beyond* mere faulty workmanship. *Id.* at *7. Similarly, any damages arising from the builder's negligence in obtaining the appropriate construction permits, "squarely fit into the scope of a contractor's work or workmanship" as such things were "prerequisites to the project's successful

completion." *Id.* (citing *Allstate Ins. Co. v. Luu*, No. 1:17-cv-TWT, 2017 WL 5573025, at *2 (N.D. Ga. Nov. 17, 2017)).

In this action, Plaintiff's alleged negligent deconstruction claim almost entirely centers on allegations about defects related to Defendant's workmanship and the deconstruction of the product that he was hired to work on—the Horizon Mill. Georgia caselaw is clear that damages resulting from faulty workmanship are not claims for "property damage" as that term is defined under standard commercial general liability policies. *Cowart*, 2019 WL 254662, at *6 (citing *Taylor Morrison Servs., Inc.*, 746 S.E.2d at 591); *see also McDonald Const. Co., Inc. v. Bituminous Cas. Corp.*, 632 S.E.2d 420, 423 (Ga. Ct. App. 2006) (citing *SawHorse, Inc. v. Southern. Guar. Ins. Co.*, 604 S.E.2d 541 (Ga. Ct. App. 2004)). "[T]he settled notion [is] that [commercial general liability] coverage generally is intended to insure against liabilities to third parties for injury to property or person [and] not mere liabilities for the repair or correction of the faulty workmanship of the insured." *Taylor Morrison Servs.*, 746 S.E.2d at 597. Plaintiff has not alleged that Defendant's negligent deconstruction caused property damage to something other than (or unrelated to) the deconstruction of the Horizon Mill. Therefore, Plaintiff's negligent deconstruction claim is not considered "property damage" under the Policy.

    b)  Negligent Hiring and Retention (Counts III) & Negligent Supervision (Count IV)

Upon review of the underlying complaint, Plaintiff's negligent hiring and retention claims, as well as his negligent supervision claim, are largely premised on allegations that AAA's negligence allowed Hood to steal lumber and other building materials belonging to Plaintiff from the job site. *See, e.g.*, [Doc. 28-2, ¶¶ 12, 18, 79, 86 ("[Hood] converted the property of Plaintiff by taking wood and other materials without authority."); ("Defendant AAA negligently hired and retained [Hood] as Defendant AAA knew or should have known that [Hood was] incompetent by reason of known habits of recklessness and [was] unsuited for the particular employment of a supervisor of a deconstruction of a building.")].

The Court concludes that the conversion of Plaintiff's property is a "loss of use of tangible property" that constitutes "property damage" as Defendant defined that term in the Policy. Such a conclusion is self-explanatory. "[I]f property is stolen, the rightful possessor is necessarily no longer able to use that property. Thus, he suffers a 'loss of use' in the plain, ordinary sense of those words." *Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc.*, 543 F. Supp. 414, 418 (E.D. Pa. 1982).[9] Plaintiff suffered a "loss of use" of

---

[9] In *Hofing GMC Truck, Inc. v. Kay Wheel Sales Co., Inc.*, 543 F. Supp. 414 (E.D. Pa. 1982), the plaintiff's property had been stolen by a third party from the premises of the defendant. The defendant hired a security agency to guard his premises on the night that plaintiff's property was stolen. *Id.* at 415. The plaintiff sought to recover damages for the value of his stolen property under the security agency's liability insurance policy. *Id.* at 417. The insurance policy provided coverage for "property damage,"

his lumber and bricks when Hood physically removed them from the job site. Therefore, the Court concludes that Plaintiff's negligent hiring and retention claims, as well as his negligent supervision claim, caused losses that constitute "property damage" under the Policy.

However, this conclusion does not necessitate a finding that coverage exists under the Policy as to these claims. Coverage only applies if the "property damage" is caused by an "occurrence." Therefore, the next relevant inquiry is whether the loss of lumber and other building materials was caused by an "occurrence" as Defendant defines that term under the Policy.

### 2)   Is the Conversion of Plaintiff's Property an "Occurrence"?

The Policy defines "occurrence" as, among other things, "an accident." [Doc. 26-3, p. 140]. The Policy does not define "accident." However, Georgia courts have defined "accident" in the insurance coverage context to mean "an event which takes place without one's foresight or expectation or design." *Allstate Ins. Co. v. Grayes*, 454 S.E.2d 616, 618 (Ga. Ct. App. 1995). It is "an unexpected happening rather than one occurring through intention or design." *Id.* "Whether an event constitutes an 'accident' is

---

which was defined under the policy as "physical injury to or destruction or tangible property" or "loss of use of tangible property which has not been physically injured or destroyed. *Id.* at 418. The district court held that the theft of plaintiff's property constituted "property damage" as defined under the applicable policy because theft of property necessarily constitutes a "loss of use" for the rightful possessor of the property because he is no longer able to use that property. *Id.* at 418.

determined based on the viewpoint of the insured." *Meritplan Ins. Co. v. Leverett*, 552 F. App'x 900, 902 (11th Cir. 2014) (citing *Rucker v. Columbia Nat'l Ins. Co./Am. Home Shield Corp.*, 705 S.E.2d 270, 273–74 (Ga. Ct. App. 2010)).

In this action, Defendant argues that the underlying incident giving rise to the "property damage" is the *intentional* act of conversion on the part of AAA's agent, and therefore, could not possibly be deemed an "accident" for coverage purposes. [Doc. 37, p. 6 (citing [Doc. 28-2, pp. 7, 10–13])]. Plaintiff argues that the underlying incident giving rise to the "property damage" is the *negligent* act of hiring, training, and supervising its agents on the part of AAA, and therefore, is properly deemed an "accident." *See* [Doc. 32, pp. 15–16 (citing *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co., Inc.*, 707 S.E.2d 369 (Ga. 2011))].

Under Georgia law, to determine whether an event is an accident, the relevant inquiry is whether the event was expected or intended to occur—from the standpoint of the insured. *See Cincinnati Ins. Co. v. Magnolia Estates, Inc.*, 648 S.E.2d 498 (Ga. Ct. App. 2007); *Crook v. Ga. Farm Bureau Mut. Ins. Co.*, 428 S.E.2d 802 (Ga. Ct. App. 1993); *Am. Empire Surplus Lines Ins. Co.*, 707 S.E.2d at 369; *see also Allstate Ins. Co. v. Florio,*[10] No.

---

[10] In *Allstate Ins. Co v. Florio*, a mother took her two young children to a dentist's office, and upon their arrival, the children were separated from their mother and placed in a children-only waiting room. 2020 WL 4529618 (N.D. Ga. Jan. 23, 2020). At the time, there was also a nineteen-year-old man with limited cognitive function in the unsupervised, children-only waiting room. *Id.* at *1. This man sexually abused one of the children while in the waiting room. *Id.* The mother learned of the sexual assault and filed suit against the dentist's office and its employees for negligently failing to provide a safe environment for her

1:19-CV-1174-TWT, 2020 WL 4529618 (N.D. Ga. Jan. 23, 2020) (concluding that the appropriate inquiry as to whether an event constitutes an "accident" for coverage purposes is whether the happening was within the "foresight, expectation, or design" of the insured). The parties do not dispute that AAA is the named insured in this action. Under Section II of the Policy, titled "Who is an Insured," Defendant defined an insured as one who has been "designated in the Declarations as . . . an organization other than a partnership, joint venture or limited liability company[.]" AAA is an organization designated in the Declarations as such.

It cannot possibly be said that from the standpoint of AAA, it could have foreseen or expected its agent to steal building materials from the job site. Obviously, AAA did not hire Hood with the intent that he commit a crime. Therefore, from AAA's perspective, the theft, albeit an intentional act, was an accident. *See Allstate Prop. & Cas. Ins. Co., v. Roberts*, 696 F. App'x 453, 456 (11th Cir. 2017) (discussing how Georgia courts have held that an intentional act can be an "accident" for purposes of insurance

---

child while she was in their care. *Id.* The dentist's office and its employees were insured by a policy with similar language to the one at issue in this action. There, the insurer of the policy argued that the incident, i.e., the sexual assault, was not an "occurrence" under its policy, and thus not covered. *Id.* at *2. The policy defined an "occurrence" as an "accident." *Id.* And, an "accident" under Georgia law is defined as an "event which takes place without one's foresight or expectation or design." *Id.* at *3 (citing *Allstate Ins. Co. v. Grayes*, 454 S.E.2d 616, 618 (Ga. Ct. App. 1995)). In ruling on the issue of coverage, the district court noted that the appropriate inquiry as to whether the sexual assault was an "accident" was whether it was within the "foresight, expectation, or design" of its insured—the dentist's office. *Id.* at *3. Therefore, the district court concluded that the sexual assault was an "accident" from the perspective of the insured and constituted a covered "occurrence" under the policy. *Id.*

coverage because the act was not foreseeable to the insured); *see also Liberty Corp. Cap. Ltd. v. First Metro. Baptist Church*, No. CV420-179, 2021 WL 4166332, at *5–6 (S.D. Ga. Sept. 13, 2021) (holding that because the church had no knowledge that its pastor would sexually assault a member of its parish, it could not be said that the church "intended or expected" the sexual assault to occur, meaning it was an "accident" from the perspective of the church for purposes of insurance coverage). Because the underlying act causing the damages (i.e., the theft) occurred without AAA's foresight or expectation, it was an "accident," and therefore, a covered "occurrence" as defined under the Policy.

The Court concludes that Plaintiff's negligent hiring and retention and negligent supervision claims—to the extent they are premised on allowing Hood to steal Plaintiff's lumber and other building materials—are covered under the Policy. Despite this conclusion, Defendant may still prevail on summary judgment if the Policy contains an exclusion that expressly bars coverage for Plaintiff's negligent hiring and retention and negligent supervision claims.

### 3)      Do Any Exclusions Bar Coverage?

Defendant argues that, even if the underlying complaint states a claim for "property damage" caused by an "occurrence," such a claim would nevertheless be excluded from coverage under the terms of the Policy. "An insurer seeking to defeat a

claim based on a policy exclusion has the burden of proving that the exclusion is applicable, and the absence of evidence does not prove the exclusion applies." *Hathaway Dev. Co., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 686 S.E.2d 855, 861 (Ga. Ct. App. 2009) (citing *Furgerson v. Cambridge Mut. Fire Ins. Co.*, 516 S.E.2d 350 (Ga. Ct. App. 1999)). Defendant points to three possible exclusions to bar coverage. [Doc. 26-1, pp. 13–15]. In consideration of the canon that exclusions in insurance policies are "narrowly and strictly construed against the insurer and [forgivingly] construed in favor of the insured to afford coverage[,]" the Court considers the merits of the parties' arguments below. *Auto-Owners Ins. Co. v. Neisler*, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015) (citations omitted).

a)   Exclusion (a)

Exclusion (a) provides that coverage does not apply to "'property damage' expected or intended from the standpoint of the insured." [Doc. 26-3, p. 126]. As stated above, AAA is the named insured in this action. And it is clear that AAA did not expect or intend for Hood to steal Plaintiff's property when it hired him to assist in deconstructing the Horizon Mill. Thus, from the standpoint of this particular insured, Exclusion (a) simply does not apply.

But, Defendant argues that under its Policy, Hood is also an insured because he was an employee of AAA, and an employee of a named insured (AAA) qualifies as an additional insured under the Policy. The logic of Defendant's argument is that from the

31

standpoint of Hood, his intentional act of theft neatly falls under this intentional injury exclusion.

Two problems. Under Section II of the Policy, titled "Who is an Insured," it is clear that AAA's "employees" are considered insureds—*"but only for* acts within the scope of their employment by [AAA] or while performing duties related to the conduct of [AAA's] business." [Doc. 26-3, p. 134 (emphasis added)].

First, the Court disagrees with Defendant's proposition that Hood is AAA's employee. Defendant claims that Plaintiff "admitted" that Hood was AAA's employee because in the Underlying Lawsuit, Plaintiff stated in his complaint that "Defendant AAA and Defendant Britton *hired and employed* Defendant Z & H and Defendant Hood in the scope and course of Defendant AAA's business of deconstructing the Building at the Property." [Doc. 28-2, ¶ 25 (emphasis added)]. But this language hardly presents dispositive and damning evidence that Hood served as AAA's employee, as that term is defined under the Policy. *See, e.g., Owens v. BarclaysAmerican/Mortg. Corp.*, 460 S.E.2d 835, 837 (Ga. Ct. App. 1995) (discussing how a business "hired" and "employed" an individual and the individual was deemed to be an independent contractor as opposed to the business's employee). What Defendant ignores in its brief is that in the *very next paragraph,* and several times throughout Plaintiff's complaint, he specifically referred to Hood as AAA's "agent." *See, e.g.,* [Doc. 28-2, ¶¶ 26, 34, 41–43, 69–70]. So, Defendant

would have the Court accept that an "agent" is synonymous to an "employee," which it simply cannot do for purposes of ruling on these pending motions. The term "agent" may also refer to an "independent contractor"—which is not the same thing as an "employee." *See, e.g.*, *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1120–21 n.16 (11th Cir. 2011) (first citing Restatement (Second) of Agency § 2(3) and then citing Restatement (Second) of Agency § 1 cmt. e (noting that "an independent contractor is included within the meaning of "agent")); *see also* Restatement (Second) of Agency § 1 cmt. e ("An agent may be one for whose physical acts the employer is not responsible and who is called an independent contractor in order to distinguish him from a servant, also an agent, for whose physical acts the employer is responsible."). Plaintiff's use of the term "agent" does not necessarily mean that Hood was AAA's "employee." *See Gateway v. Atlanta Apartments, Inc.*, 660 S.E.2d 750, 758 (Ga. Ct. App. 2008) (stating that the court was "unpersuaded that the use of the term 'agent' to describe [a party in the contract]" necessitates a finding that the party was an employee, rather than an independent contractor).

Furthermore, even more confusing is the fact that Defendant routinely refers to Hood as a *contractor*. *See, e.g.*, [Doc. 26-1, pp. 1–2 ("AAA hired a contractor to oversee the project. Plaintiff discovered that AAA's contractor stole lumber and other materials[.]")]; [Doc. 26-1, p. 2 ("AAA has admitted [that its] contractor, which it

33

directly controlled and commanded throughout the project, stole lumber and other materials belonging to the Plaintiff while acting as an agent of AAA[.]"); ("AAA failed to . . . use reasonable care in hiring, supervising, training, and retaining the contractors on the project.")]; [Doc. 26-1, p. 6 ("As part of the consent judgment, AAA admitted to the following: (1) AAA hired a contractor to oversee the deconstruction project; (2) AAA directly controlled and commanded the actions of the contractor; (3) the contractor was acting as an agent of AAA at the time it appropriated wood and other materials belonging to Plaintiff without authority[.]")]. This distinction is important because when Defendant wrote the Policy, it only included AAA's "employees"—not its "agents" or "contractors"—as insureds for coverage purposes. And Defendant, as the drafter of its Policy, could have enlarged the scope of its definition of an insured to include individuals serving as agents or contractors of its named insured. But it did not. And it certainly cannot do so now[11] in the eleventh hour, when it would benefit its argument.

Second, even if Plaintiff's supposed admission converts Hood into AAA's "employee," the Policy only considers him to be an insured "for acts within the scope of

---

[11] As an additional point, Defendant was afforded the opportunity to dispute the allegations set forth in the Underlying Complaint at the time it was presented with the lawsuit. However, Defendant chose not to partake in the Underlying Litigation. Therefore, it seems odd that Defendant now appears to take issue with the language of the claims for which its insured admitted liability. Gone is the time for the parties to litigate the underlying facts of this action. Instead, the issue before the Court is one of coverage.

[his] employment by [AAA] or while performing duties related to the conduct of [AAA's] business." [Doc. 26-3, p. 134]. It defies common sense that Hood's theft occurred within the scope of his employment or while he was performing duties related to AAA's business. Of course, AAA did not employ Hood so that he could steal Plaintiff's lumber and other building materials. The Court cannot read this exclusion so broadly to include any act committed during the existence of employment. As the Court mentioned earlier, Georgia law requires courts to construe exclusions in insurance contracts against the insurer, not in their favor. *Am. Strategic Ins. Corp.*, 759 S.E.2d at 567.

Defendant fails to show that Hood acted within the scope of his employment (or agency for that matter), when he stole Plaintiff's property from the job site. AAA hired Hood to deconstruct the Horizon Mill, as well as stack and bind salvageable building materials for Plaintiff's future use. Hood "stepp[ed] aside from [AAA's] business to do an act entirely disconnected from it[.]" *Graham v. City of Duluth*, 759 S.E.2d 645, 650 (Ga. Ct. App. 2014) (citing *Piedmont Hosp., Inc. v. Palladino*, 580 S.E.2d 215, 217 (Ga. 2003)). Since Hood was not acting within the scope of his employment (or agency), it cannot be said that he is an insured under the Policy.

Bottom line, the Court is not persuaded by Defendant's argument that Hood is AAA's employee. And, even if the Court was persuaded, it cannot conclude that Hood was acting within the scope of his employment when he stole from Plaintiff, so that he

qualifies as an insured under the Policy. Again, the Policy that Defendant drafted named AAA as the only insured. From AAA's vantage point, it neither expected nor intended for Hood to steal Plaintiff's property. This exclusion does not bar coverage.

b)   Exclusion (j)(5)

Next, Defendant asserts the applicability of Exclusion (j)(5), which states that coverage does not apply to "'property damage" to "[p]ersonal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured[.]" [Doc. 26-3, pp. 128–29]. Defendant argues that this exclusion bars coverage for damages resulting from the theft of Plaintiff's property because AAA admitted Hood was its agent, and therefore "was in possession and control of Plaintiff's property vis-à-vis its agent when the property was converted." [Doc. 26-1, p. 14]. Once again, it appears that Defendant's reliance on this exclusion stems from its mistaken assertion that Hood was AAA's employee, so that his misconduct is imputed to AAA.

But as the Court explained above, Defendant didn't include the terms "agents," "contractors," or "employees" acting outside the scope of their employment, in its definition of "insured." And, because this exclusion only applies to AAA, it doesn't apply to the facts of this case. In the Underlying Lawsuit, Plaintiff never alleges that the stolen property was in the care, custody or control of AAA. No, Plaintiff alleges that

Hood was hired to deconstruct the Horizon Mill and stack and bind the salvageable lumber and bricks. To steal the bricks, Hood necessarily controlled them.

c)      Exclusion (m)

Lastly, Defendant relies on Exclusion (m), which bars coverage for "property damage" to "'impaired property' or property that has not been physically injured, arising out of . . . a delay or failure by [AAA] or anyone acting on [AAA's] behalf to perform a contract or agreement in accordance with its terms." [Doc. 26-3, p. 129]. Defendant argues that AAA contracted with Hood to "stack and bind salvageable wood for Plaintiff's sole use," and Hood breached the contract when he stole the wood and other building materials from the job site. [Doc. 37, p. 19]. As to this argument, the Court notes that this action is not about Hood's failure to stack and bind wood for Plaintiff. This is about AAA's negligence in hiring, retaining, and supervising Hood during the deconstruction process that allowed Hood to steal property from the job site. Any damages that Plaintiff seeks under his negligent hiring and retention claims and negligent supervision claims are not premised on the failure by AAA or Hood to stack and bind the building materials. As relevant to this action, Plaintiff does not complain that his property wasn't bound or stacked; he complains that AAA allowed Hood to steal it.[12] Therefore, this exclusion does not apply to bar coverage for his claims.

---

[12] Of course, as a matter of logic and common sense, properly stacking and binding of the material would only have made it easier for Hood to steal. It is much easier to steal a pallet of bricks than one at a time.

<u>CONCLUSION</u>

The Court concludes that the Policy provides coverage for Plaintiff's claims of negligent hiring and retention and negligent supervision only to the extent that they seek damages for the stolen lumber and other building materials. Any portion of the Consent Judgment premised on faulty workmanship or the improper deconstruction of the mill is not covered under the Policy. Defendant is obligated to cover those sums that AAA is legally obligated to pay under the terms of the Policy. Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment [Doc. 26] and **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Summary Judgment [Doc. 25].

**SO ORDERED**, this 29th day of September, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**